**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

———————————————————————

MITCHAEL BOSLEY,                                     :
                    Plaintiff,         :
                                   :
          v.                                          :        No. 21-cv-4616
                                   :
RAWDEN JOINT VENTURES CORPORATION, :
*d/b/a* MCDONALD'S, MCDONALD'S              :
CORPORATION, *and* MCDONALD'S USA,         :
LLC,                                                 :
                    Defendants.        :

———————————————————————

**O P I N I O N**

**Defendant Rawden Joint Ventures Corporation d/b/a McDonald's Motion for Summary
Judgment, ECF No. 45 – Granted in part, Denied in part**

Joseph F. Leeson, Jr.                                                     **August 26, 2022**
United States District Judge

## I.     INTRODUCTION

This is an employment discrimination case.

Rawden Joint Ventures Corporation owns a franchise McDonald's restaurant in Manheim,

Pennsylvania (the "Restaurant"). Mitchael Bosley is a male who has been diagnosed with several

intellectual disabilities and who works at the Restaurant as a crew member.

Mitchael alleges that, because of his disabilities and gender, he was the victim of constant

harassment at the hands of his co-workers and managers, and that this harassment reached a

breaking point when his manager allowed a non-employee into the Restaurant's staff room where

the non-employee slapped Mitchael in the face. According to Mitchael, the numerous incidents of

harassment, including being slapped, constitute a hostile work environment. He also alleges that

Rawden retaliated against him for complaining about said harassment. For those reasons, he brings

four claims against Rawden: 1) a disability discrimination claim under the Americans with

Disabilities Act (ADA); 2) a hostile work environment claim under the ADA and Title VII; 3) a retaliation claim; and 4) a claim under the Pennsylvania Human Relations Act (PHRA). *See* ECF No. 1, Compl.

Before the Court is Rawden's motion for summary judgment. Rawden contends that there is no genuine dispute as to any material fact for any of Mitchael's claims. Rawden also argues that it cannot be held liable for the slapping incident because it involved a non-employee, and because it took appropriate remedial measures in response to the incident.

The Court agrees that Rawden, as a matter of law, is not liable for the non-employee's actions. For that reason, Mitchael cannot rely on the slapping incident to support his hostile work environment claim. Absent that, however, Mitchael has still produced enough evidence to establish that a question of fact exists as to whether he was subjected to a hostile work environment. As a result, that claim survives Rawden's motion for summary judgment. Mitchael's claim of disability discrimination and his claim brought under the PHRA also survive for the same reason.

However, there is no genuine dispute as to any material fact for Mitchael's claim of retaliation. The Court therefore grants judgment in favor of Rawden and against Mitchael on that claim.

## II.     BACKGROUND

### a.  *Procedural History*

Mitchael filed a complaint with this Court, alleging that Rawden discriminated against him, subjected him to a hostile work environment, and retaliated against him. *See* Compl. The Complaint alleges that Mitchael is a qualified individual under the ADA because of several diagnoses of mental disabilities. The Complaint also alleges that Rawden's "managers and co-workers harassed [him] because of his disability and/or his gender." *Id.* ¶ 23. Specifically, the Complaint alleges that Mitchael's shift manager goaded him to hug and kiss other individuals even though he didn't want

to and that his co-workers took his phone without his consent. The Complaint alleges that the harassment culminated on November 17, 2019, when Nick Ziegler, a non-employee, entered the staff room and slapped Mitchael in the face. The Complaint further alleges that a Rawden employee recorded the event on their cellphone and later posted it to social media.

Rawden filed an answer to the Complaint that denied the allegations. Following discovery, Rawden filed a motion for summary judgment, s*ee* ECF No. 45, Mot., and a statement of undisputed facts. *See* ECF No. 45-2, Rawden's Stat. Undisp. Facts ("RSUF"). Mitchael filed a response to the Motion, *see* ECF No. 66, Resp., and a response to Rawden's statement of undisputed facts. *See* ECF No. 66, Mitchael Resp. Undisp. Facts ("MRUF"). In the Response, Mitchael also included additional material facts that he believes preclude summary judgment. *See* ECF No. 66, Mitchael Add. Mat. Facts ("MAMF"). Rawden filed a reply to the Response, *see* ECF No. 71, Reply, and a response to Mitchael's additional facts. *See* ECF No. 72, Rawden Resp. to Mitchael's Add. Facts ("RRAF"). Finally, Mitchael filed a sur-reply. *See* ECF No. 81, Sur-reply.

### b.  *Undisputed Facts*[1]

*Mitchael Bosley*

Mitchael identifies as male. RSUF ¶ 4. In May 2018, while he was still in high school, he started working at the Restaurant. RSUF ¶ 1. He secured his employment with Rawden through IU13, a public service agency that pairs students with disabilities with local businesses. RSUF ¶ 2. Mitchael has a number of mental disabilities, including intellectual development disability, pervasive development disorder NOS, and attention deficit hyperactivity disorder. RSUF ¶ 3.

---

[1]      The facts in this section that are cited to RSUF have been admitted by Mitchael in his MRUF using the corresponding paragraph numbers. Thus, the Court cites only to RSUF in order to avoid redundancy.

Similarly, the facts in this section that are cited to MAMF have been admitted by Rawden in its RRAF using the corresponding paragraph numbers. Thus, the Court cites only to MAMF in order to avoid redundancy.

*Rawden and its Managers*

The chain of command at Rawden is crew member, shift manager, assistant manager, then general manager. MAMF ¶ 48. On November 17, 2019, Mitchael was a crew member, Chad Waltz was the shift manager, Jessica Cochran was the assistant manager, and Rhonda White was the general manager. MAMF ¶ 49. Jessica Cochran, Chad Waltz, and Rhonda White were aware of Mitchael's disability at all times relevant to the case. MAMF ¶ 50.

Rawden has an Employee Handbook that includes policies against discrimination and harassment. RSUF ¶ 9. Rawden's Employee Handbook also includes a policy prohibiting retaliation against an employee who reports claims of discrimination or harassment. RSUF ¶ 10. By way of his signature, Mitchael acknowledged his receipt of Rawden's Employee Handbook policies when he was hired. RSUF ¶ 11.

*The Incident*

On November 17, 2019, Nick Ziegler, a former Rawden employee who was home on leave from the military, visited his former co-workers at the Restaurant. RSUF ¶ 13. Mitchael was in the staff room. MAMF ¶ 74. At some point, Mitchael approached Ziegler in an attempt to hug him. RSUF ¶ 15. When he approached Ziegler, Ziegler pushed Mitchael's glasses off his face. RSUF ¶ 16. This interaction between Mitchael and Ziegler was filmed on a cellphone. RSUF ¶ 20.

There is also a security video camera in the Rawden staff room. MAMF ¶ 71. That camera captured a security video that showed the conduct leading up to the incident, the incident, and the aftermath of the incident. MAMF ¶ 115.

Ziegler was convicted of criminal harassment as result of the incident. MAMF ¶ 99. Dr. Margaret Kay evaluated Mitchael on June 28, 2022 and July 1, 2022. MAMF ¶ 55.

*After the Incident*

Following the incident, Rawden's Area Supervisor, Andrei Tugulia, conducted an investigation which resulted in Ziegler being banned from the Restaurant. RSUF ¶ 23. Rhonda White, Rawden's General Manager, also issued a store-wide rule that Ziegler was no longer permitted within fifty (50) feet of the Restaurant. RSUF ¶ 25. Mitchael has not seen Ziegler since the incident. RSUF ¶ 26. Tugulia also issued written disciplinary forms to the two management-level employees that were present during the incident, Jessica and Chad. RSUF ¶ 27.

Other than the November 17, 2019, incident, Tugulia was never notified of any issue of former employees being allowed in the employee-only areas of the restaurant and having hit another person. RSUF ¶ 29. Other than the November 17, 2019, incident, Tugulia was never notified of any issue of Mitchael being harassed or discriminated against. RSUF ¶ 30. Tugulia is unaware of any prior complaint of any Rawden employee acting in an allegedly harassing or discriminatory manner toward Mitchael. RSUF ¶ 31.

Mitchael continues to be employed by Rawden to this day. RSUF ¶ 5. His scheduled work hours around the time of the incident were as follows:

- October 2019 – 97.5;
- November 2019 – 109.5;
- December 2019 – 107;
- January 2020 – 113; and
- February 2020 – 107.

RSUF ¶ 41.

Mitchael's actual hours worked during that timeframe were as follows:

- In October 2019 – 125.07;
- In November 2019 – 114.75.
- December 2019 – 83.9;
- January 2020 – 125.85; and
- February 2020 – 91.27.

RSUF ¶ 42.

Since he began working for Rawden, Mitchael's hourly pay rate has increased. RSUF ¶ 45. While working at Rawden, Mitchael's pay rate has never decreased. RSUF ¶ 46.

### III.   LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A disputed fact is "material" if proof of its existence or nonexistence might affect the outcome of the case under applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 257.

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue.  Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 323. The court must consider the evidence in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

## IV.    ANALYSIS[2]

At the outset of its analysis, the Court notes that it must view the evidence in a light most favorable to Mitchael as the nonmoving party when adjudicating this motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

According to the Complaint and Response, Mitchael's coworkers bullied him because of his disabilities and gender, and his supervisors did nothing to stop it. All of this culminated with the incident on November 17, 2019 when Rawden managers allowed Ziegler into the staff room where he slapped Mitchael in the face. After Mitchael complained about the incident, his work hours were reduced. As a result, Mitchael brought suit against Rawden, alleging three claims: 1) Hostile Work Environment; 2) Disability Discrimination; and 3) Retaliation.[3]

Rawden paints a different picture. According to Rawden, Mitchael was treated like any other employee. It argues that any mistreatment Mitchael might have experienced was minor and was not because of his disabilities or gender. Also, Rawden argues that it is not responsible for Ziegler's behavior because he is non-employee. Lastly, Rawden explains that Mitchael's hours were reduced

---

[2]    In its Reply, Rawden takes issue with several of the exhibits Mitchael attached to his Response: Kelly Bosley's deposition transcript (ECF No. 66-3); Dr. Kay's report (ECF No. 64); Dr. Kay's Supplement (ECF No. 66-10); and Rhonda White's sworn statement (ECF No. 66-16). Rawden argues, among other things, that these exhibits should not be considered when adjudicating the motion for summary judgment because they contain hearsay that would be inadmissible at trial.

However, "hearsay statements can be considered on a motion for summary judgment if they are capable of admission at trial." *Veolia Water Sols. & Techs. N. Am., Inc. v. Aquatech Int'l Corp.*, 123 F. Supp. 3d 695, 701 (W.D. Pa. 2015). The statements that Rawden complains of in this case are capable of admission at trial. For example, Kelly Bosley testified in her deposition of things that Mitchael told her, which is hearsay. But Mitchael could take the stand and testify of those things himself. In any event, Rawden is not prejudiced by the Court's consideration of the exhibits because the Court's conclusion in this Opinion would not change even if it did not consider the exhibits.

[3]    Mitchael brings his claims under the ADA and Title VII. As mentioned in the Introduction, he also brings a fourth claim alleging that Rawden's same actions violated the Pennsylvania Human Relations Act (PHRA). The Court does not discuss the fourth claim separately in its analysis because claims of discrimination under all three acts are "effectively indistinguishable" from one another, and courts use the same analysis when evaluating claims brought under these acts. *See Lee v. Univ. of Pennsylvania, Sch. of Dental Med.*, No. CV 19-835, 2019 WL 4060843, at *5 (E.D. Pa. Aug. 27, 2019).

for legitimate business reasons, not in retaliation. Rawden contends that there is no evidence to support Mitchael's version of events and that, as a result, it is entitled to summary judgment in its favor.

The Court determines that Mitchael has met his burden at this stage to produce evidence that genuine disputes of material fact exist for two of his three claims: hostile work environment and disability discrimination. The Court agrees with Rawden, however, that Mitchael does not show that a question of fact exists for his retaliation claim. The Court discusses each of Mitchael's three claims below.

### 1. *Hostile Work Environment Claim*

Mitchael's first claim is that Rawden subjected him to a hostile work environment. He brings this claim under both the ADA and Title VII. Such a claim may be brought under either act, and the analysis is the same under both. *See Walton v. Mental Health Ass'n. of Se. Pennsylvania*, 168 F.3d 661, 666 (3d Cir. 1999). Mitchael alleges that he was harassed regularly during his employment. The most serious of these allegations is the slapping incident, but he also points to several other incidents leading up to November 17, 2019, including his phone being taken, being goaded to hug other employees, and being called names.

Rawden makes two attacks on the hostile work environment claim. First, it singles out the most serious allegation, the slap, and argues that it cannot support a hostile work environment claim because Ziegler was a non-employee. Second, Rawden focuses on the remaining allegations of harassment and argues that they fail to establish a prima facie claim for a hostile work environment. The first argument is convincing, but the second is not.

### a. The Slap

It is undisputed that Ziegler was a non-employee. "An employer may be liable for a non-employee's actions where the employer knows or should have known of the conduct and fails to

take immediate and appropriate corrective action." *Davis v. Elwyn, Inc.*, No. 2:20-CV-05798-KSM, 2022 WL 970842, at *7 (E.D. Pa. Mar. 31, 2022). The test is essentially a negligence analysis with two separate inquiries. *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 72 (1986); *see also Turnbull v. Topeka State Hosp.*, 255 F.3d 1238, 1244 (10th Cir. 2001) (referring to the test as a "negligence analysis"). First, courts consider whether the employer had actual or constructive knowledge of the harassment. *See Turnbull*, 255 F.3d 1238, 1244 (10th Cir. 2001). Second, courts consider whether the employer's response to the harassment was adequate. *See id.* A plaintiff must pass both hurdles before an employer can be liable for a non-employee's actions.

Rawden argues first that it cannot be liable for Ziegler's actions, a non-employee, because it did not know that he would slap Mitchael. The record supports this. For example, Ariana, a Rawden employee that was in the staff room during the incident, testified that she did not know that Ziegler was going to slap Mitchael. ECF. 45-6, Ariana Depo. 32:7–9. She also testified that no one else in the staff room knew of Zielger's intentions either. *See id*. 32:10–12. Jessica corroborated Ariana's testimony and said that she "didn't know that" Ziegler was going to slap Mitchael. ECF No. 45-11, Jessica Depo. 21:8–22:4. Chad also testified that the employees "were all surprised" by the slap and that he did not know Ziegler planned to slap Mitchael. ECF No. 45-18, Chad Depo. 42:14–18.

Mitchael disagrees. He argues that the video footage itself creates a genuine dispute as to whether the employees knew of Ziegler's plan. Specifically, Mitchael points out that the video footage shows that Ziegler had his right arm cocked back, which signaled his intent to strike Mitchael. At one point in the cellphone video, Ziegler also looks into the camera, which, according to Mitchael, shows that Ziegler had conspired with the employee on what he was about to do.

The Court is not persuaded by Mitchael's argument. Rawden cited testimonial evidence that its employees did not know of Ziegler's intentions. Mitchael attempts to combat the cited evidence with pure conclusory allegations and suspicions, which are not sufficient to survive a motion for

summary judgment. *See Owens v. Coleman*, 629 F. App'x 163, 168 (3d Cir. 2015). Mitchael must produce at least some evidence that the Rawden employees knew or should have known that Ziegler planned to slap him, and he has not met that burden.

Even if the Court assumed that Chad and Jessica knew that Ziegler planned to slap Mitchael, that fact would not make Rawden liable for the incident. *See Knabe v. Boury Corp.*, 114 F.3d 407, 411 (3d Cir. 1997) (holding that liability for a hostile work environment "is not automatic even if the . . . hostile work environment is created by a supervisory employee"). Mitchael argues that because two lower-level managers were present in the staff room when Mitchael was slapped, Rawden forfeits "any affirmative defense that it may have pursuant to *Faragher-Ellerth*." Resp. 13 n.6.

There are two problems with that argument. First, harassment from supervisory employees, such as Chad and Jessica, does not automatically create a hostile work environment. Second, Rawden has not raised the *Faragher-Ellerth* defense. That defense asks whether an employer took steps to prevent sexually harassing behavior and whether the employee unreasonably failed to take advantage of any preventative opportunities provided by the employer. *See Cacciola v. Work N Gear*, 23 F. Supp. 3d 518, 530 (E.D. Pa. 2014). Rawden's actual defense focuses on the acts of non-employees and asks whether Rawden knew of the harassment and whether it took adequate remedial steps in response to the harassment. Mitchael does not cite any authority to support his assertion that Rawden is foreclosed from the defense it actually raises, and this Court is not aware of any authority that does support his argument.

Moreover, even assuming, again, that Chad and Jessica had some knowledge of Ziegler's plans, Mitchael must still clear the second hurdle to impose liability on Rawden for Ziegler's actions. In other words, Mitchael must produce some evidence that Rawden failed to correct

Ziegler's harassing behavior or failed to take adequate steps to correct the same. Mitchael cannot clear this hurdle, as a matter of law, based on the undisputed record.

Andrei, Rawden's Area Supervisor, conducted an investigation after the incident. Based on that investigation, Rawden banned Zeigler from the Restaurant. Also, Jessica and Chad both received written disciplinary forms. Mitchael does not dispute this. He does not challenge whether Rawden took *any* remedial action. Instead, he argues that the remedial actions Rawden took were insufficient.

There is not a bright-line rule for measuring whether an employer's response is adequate. *See Turnbull*, 255 F.3d 1238, 1244–45 (10th Cir. 2001). However, "the inquiry is not whether [the employer's] response was the best course of action possible, but rather whether it was appropriate in light of all the circumstances." *Crist v. Focus Homes, Inc*., 122 F.3d 1107, 1112 n.5 (8th Cir. 1997). The crux of the question is whether Rawden's response was "reasonably calculated" to prevent future acts of harassment. "So long as the remedy is reasonably calculated to prevent future instances of harassment, the company cannot be held liable under a negligence theory of agency." *Knabe*, 114 F.3d 407, 414 (3d Cir. 1997).

In this case, the Court does not need to guess whether Rawden's corrective actions were reasonably calculated to prevent future acts of harassment because there is no evidence that Mitchael was harassed by Ziegler, or any other non-employee, again. Indeed, Mitchael never saw Ziegler again. Importantly, Mitchael does not allege that he suffered from any other forms of harassment after the incident.[4] Mitchael may have preferred that Chad and Jessica received a harsher punishment, but Rawden need not take punitive action against every harassing employee in order to insulate it from liability from a hostile work environment. *Id*. Mitchael "cannot dictate that

---

[4]    *See* Resp. 15 (Acknowledging that the alleged "incidents occurred over the course of 18 months" between Mitchael's hire in May 2018 and ending with the slapping incident in November 2019.).

[Rawden] select a certain remedial action." *Id*. In other words, Rawden's chosen remedial action is adequate, as a matter of law, because it was reasonably calculated to prevent future harassment even though it is not the remedial action that Mitchael preferred.

In sum, there is not a genuine dispute of material facts as to whether Rawden took appropriate corrective action in response to the slapping incident. Rawden therefore cannot be liable for Ziegler's actions as a matter of law. As a result, Mitchael cannot rely on the slapping incident to support his claim for a hostile work environment.

### b.   Remaining Allegations of Harassment

 Mitchael's remaining allegations of harassment to support his hostile work environment claim are as follows:

1. Employees would take Mitchael's phone and take selfies with it.
2. Employees and managers would call Mitchael names such as "stupid" or "slow" or "retard."
3. Employees would touch Mitchael.
4. Jessica pressured Mitchael to kiss and hug other employees approximately once per week.
5. Employees would pressure Mitchael to make uncomfortable comments to customers, such as asking a customer if they were dating one of the McDonald's employees.
6. Employees would pressure Mitchael to perform their job responsibilities.

Resp. 14.

The Court notes that it is not clear from Mitchael's Complaint which harassment he believes was based on his disabilities (covered by the ADA), and which harassment he believes was based on his gender (covered by Title VII). In his Response, Mitchael clarifies,

> that the primary thrust of his claims is that he was harassed, and his supervisors and coworkers created a hostile work environment, because of his mental disabilities. However, the harassment also involved [Jessica's] repeated pestering of Mitchael to hug and kiss other employees. Hugging and kissing has a sexual aspect to it and, for that reason, Mitchael contends that his Title VII and PHRA gender discrimination claims should proceed along with his ADA and PHRA disability claims.

Resp. 16 n. 9. Based on that concession, the Court analyzes Mitchael's allegations of harassment, numbered 1–6 above, accordingly.

"To succeed on a hostile work environment claim under the ADA, the employee must show the following five factors: (1) he is a qualified individual with a disability under the ADA; (2) he was subject to unwelcome harassment; (3) the harassment was based on his disability or a request for an accommodation; (4) the harassment was sufficiently severe or pervasive to alter the conditions of his employment and to create an abusive working environment; and (5) the employer knew or should have known of the harassment and failed to take prompt effective remedial action." *Canada v. Samuel Grossi & Sons, Inc.*, 476 F. Supp. 3d 42, 60 (E.D. Pa. 2020) (cleaned up). The test is the same under Title VII except the employee must show that the harassment was based on their sex, not their disabilities.[5] *See McClain v. Sw. Steel Co*., 940 F. Supp. 295, 301 (N.D. Okla. 1996).

Rawden takes issue with elements three and four. First, it argues that there is no evidence that Mitchael was harassed because of his disabilities or gender. Second, it argues that the alleged harassment was not severe or pervasive. The Court discusses both arguments below.

### i. Was the harassment based on Mitchael's gender or disabilities?

The ADA "does not make all harassment, or every unpleasant working environment, actionable under the law. Rather, to constitute a hostile work environment under the ADA, the harassing conduct must be *because* of the plaintiff's disability." *Barclay v. Amtrak*, 435 F. Supp. 2d 438, 448–49 (E.D. Pa. 2006) (emphasis in original), aff'd, 240 F. App'x 505 (3d Cir. 2007). Similarly, Title VII only prohibits harassment that is based on an employee's sex.

---

[5]     "To establish a prima facie hostile work environment claim under Title VII and the PHRA, [plaintiff] must show (1) the employee suffered intentional discrimination because of their sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of respondeat superior liability." *Burgess v. Dollar Tree Stores, Inc.*, 642 F. App'x 152, 154–55 (3d Cir. 2016) (cleaned up).

Rawden argues that there is no evidence to suggest that Mitchael was harassed because of his disabilities or gender. However, that is simply not true. In a sworn statement from Rhonda White, she states, "Some of the assistant managers and employees made fun of Mitchael and took advantage of him. Mitchael was an easy target because of his disability." ECF No. 66-16 ¶ 3. That statement alone prevents summary judgment on this issue.

Rawden points out that Mitchael himself does not believe that he was harassed because of his disabilities or gender. For example, Rawden cites to Mitchael's deposition transcript,

Q. Did you ever see Jessica tell anyone else to give someone a hug?

A. No.

Q. Does – do you have any idea why Jessica would ask you to do that?

A. No, ma'am. I really don't know
.
Q. Do you feel that it's related to your gender?

A. No, ma'am.

Mitchael Depo. 53:25–54:8.

It is important, however, to consider the record as a whole in order to put that testimony in proper context. For example, later in the deposition, Mitchael testified as follows,

Q. So, my question is, do you think that you know, Jessica was asking you to hug people because you identify as male?

A. No, I'm not 100 percent – I'm not 100 percent sure of that answer. I'm not 100 percent sure though.

Mitchael Depo. 54:22–55:2.

After reviewing the transcript in its entirety, it appears that Mitchael often equivocated when he was asked whether he knew why he was being harassed. Thus, whether Mitchael believed that he was being harassed because of his disabilities or gender is a credibility determination, which is better left for the jury.

In sum, when viewed in isolation, much of the alleged harassment does not appear to be based on Mitchael's disabilities. For example, the allegation that employees would take his phone without permission and use it to take selfies has no obvious link to Mitchael's disabilities. However, when the allegations are viewed in their entirety, along with Rhonda White's statement, a reasonable jury could find that there was a pattern of Mitchael being teased because of his disabilities. Also, the Court agrees with Mitchael that a reasonable jury could find that being pressured to hug and kiss other individuals was based on his gender by its nature alone. Of course, a reasonable jury could also be persuaded by Rawden's evidence and find that the harassment was not based on Mitchael's disabilities or gender. And that is precisely what a jury trial is for. Thus, Mitchael has met his burden at this stage to produce at least some evidence that creates a question of fact as to this issue.

### ii.   *Was the harassment severe or pervasive?*

Based on Mitchael's concession above, the Court analyzes Mitchael's remaining allegations of harassment, numbered 1–6 above, accordingly. Specifically, it views allegation 4 through the lens of Title VII and then views all six allegations through the lens of the ADA. Rawden argues that Mitchael has failed to establish that the harassment was severe or pervasive under either act.

"The severe or pervasive element requires conduct that is sufficient to alter the conditions of the plaintiff's employment and to create an abusive working environment. In determining whether a work environment is sufficiently abusive or hostile, courts look at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *MacVaugh v. Cnty. of Montgomery*, 301 F. Supp. 3d 458, 466 (E.D. Pa. 2018) (cleaned up). The more severe the harassment is, the less pervasive it needs to be in order to create a hostile work environment. While it is possible for a single incident to constitute a

hostile work environment claim, such an incident would have to be extremely severe. *See Bedford v. Southeastern Pa. Transp. Auth.,* 867 F.Supp. 288, 297 (E.D.Pa.1994). Generally, a plaintiff must show that he suffered repeated if not persistent acts of harassment in order to support a hostile work environment claim. *See id.* "A plaintiff cannot rely upon casual, isolated, or sporadic incidents to support her claim of hostile work environment harassment." *McCutchen v. Sunoco, Inc.*, No. 01-2788, 2002 WL 1896586, at *4 (E.D. Pa. Aug. 16, 2002), aff'd, 80 F. App'x 287 (3d Cir. 2003). To be pervasive, the incidents must be "sufficiently continuous and concerted." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 n.1 (1998).

### 1.   Allegation 4 under Title VII

According to Mitchael, only allegation 4 was based on his sex—"Jessica pressured Mitchael to kiss and hug other employees approximately once per week." To support this allegation, Mitchael cites to two sections of his own deposition transcript. However, upon review of those sections, and the rest of the record, the allegation, as quoted, does not hold water.

The first cited section reads as follows,

Q. Okay. So the first example it says, Jessica Cochran, a shift manager, directed Mr. Bosley to hug Autumn Baldwin, another shift manager. Mitchael did not want to hug Autumn but Miss Cochran continued bothering him until he complied. Do you remember this incident?

A. Yes.

Q. Is there anything more to it than what I just read?

A. Nope, that's pretty much what is said is true.

Mitchael Depo. 52:15–25.

The citation does not support the allegation that Jessica pressured him to kiss Autumn. Nor does it support the allegation that this type of event happened on a weekly basis. The second citation is even less helpful to Mitchael. In the second section, Mitchael simply confirms an allegation from the Complaint:

Q. Okay. So, I want to ask you about a couple of the paragraphs. Okay, so paragraph 24 says, around once a week Plaintiff's shift manager Jessica Cochran would direct plaintiff to kiss or hug other individuals. Plaintiff is you, Mitchael Bosley. So is this true that your shift manager Jessica Cochran would direct you to kiss or hug other individuals once a week?

A. Yes, ma'am.

Mitchael Depo. 64:24–65:9

Mitchael does not elaborate further, and the record is devoid of any evidence to flesh this allegation out; there is no evidence of when these hugs occurred; there is no evidence of where these hugs happened; and there is no evidence of who was involved with these hugs. To the contrary, the only evidence in the record regarding this allegation supports that it did not happen. *See* Jessica Depo. 68:3–11 (testifying that she would not tell Mitchael to hug someone); *see also id.* 82:19–24 (same).

The Court notes that this is not a matter of "he said she said." If that were the case, then it would be a credibility determination better suited for a jury. If Mitchael testified to one thing, and Rawden provided contrary evidence, then that would be an issue for trial, but that is not the case here.

Here, Mitchael "has failed to support the allegations in [the Complaint] with specific alleged incidents." *McCutchen v. Sunoco, Inc.*, No. 01-2788, 2002 WL 1896586, at *4 (E.D. Pa. Aug. 16, 2002), aff'd, 80 F. App'x 287 (3d Cir. 2003). "His failure to do so prevents the court from applying the conclusory allegations to meet the severe and pervasive standard." *Id.* Mitchael "may not successfully oppose a summary judgment motion by resting upon mere allegations or denials contained in the pleadings, or by simply reiterating those allegations or denials in an affidavit." *Van Horn v. Suhor Indus., Inc.*, 829 F. Supp. 2d 321, 325 (W.D. Pa. 2011). In other words, Mitchael has not met his burden here to "offer specific evidence found in the record" because his second citation

to his own deposition transcript adds nothing to the conclusory allegation contained in the Complaint. *See id*.

In reality, Mitchael provides only one example of being goaded to hug a co-worker, but that one event does not rise to the level of being so severe or pervasive that it altered the conditions of his employment.[6] "Without more detail regarding the nature and circumstances surrounding" the other alleged hugging and kissing incidents, "no reasonable juror has a proper basis for concluding that the harassment was so 'severe or pervasive' that it can be said to have altered the conditions of [Mitchael's] employment." *Mercer v. Se. Pennsylvania Transit Auth.*, 26 F. Supp. 3d 432, 445 (E.D. Pa. 2014), *aff'd sub nom.*, 608 F. App'x 60 (3d Cir. 2015). Thus, there is no genuine dispute of material fact as to whether Mitchael was subjected to a hostile work environment that was based on his gender in violation of Title VII. To the extent that Mitchael's claim of a hostile work environment is brought under Title VII, it is dismissed.

### 2.  The allegations under the ADA

The Court now considers all of Mitchael's allegations when determining whether a hostile work environment existed under the ADA.  This analysis includes allegation 4, which was also viewed under the lens of Title VII, because, as determined above, a reasonable jury could find that each incident was part of a practice to bully Mitchael based on his disabilities. Rawden argues that the harassment was not severe or pervasive because the incidents were "totally benign" and were "minor annoyances." Mot. 14.

Mitchael's six allegations, as they are quoted from the Response above, are, to put it mildly, embellished. As the Court already explained, allegation 4 is not as severe or pervasive as it appears

---

[6]       The Court notes that even though Mitchael only cited to these two sections of his deposition transcript to support this allegation, he also testified that he was pressured to hug Ziegler. *See* Mitchael Depo. 29:11–20. Nevertheless, even considering the allegations in tandem, they still do not rise to the level of being so severe or pervasive that a hostile work environment existed under Title VII.

on its face after comparing it to the actual record. A similar exercise with allegations 1–3 and 5–6 also reveals that their surface appearance is worse than their reality.

For example, the Court first takes a closer look at the allegation that "employees would take Mitchael's phone and take selfies with it." To support this allegation, Mitchael cites to two sections of his own deposition transcript. In the first, Mitchael testified that Preston, a co-worker, "tried to unlock" his phone "and it got locked out for 30 minutes." Mitchael Depo. 23:24–25:7. However, Mitchael admitted that he only assumed Preston took his phone because he didn't actually see it happen. *Id*. 24:10–24, 25:8–16. The second cited example of Mitchael's phone being taken is similar to the first. Mitchell admits that he doesn't "remember what happened" but he knows it happened. Mitchael Depo. 55:21–56:2.

The Court next examines the allegation that "employees would touch Mitchael." To support this allegation, Mitchael points to a single section in his own deposition transcript. The use of the word "employees" in the plural form here is deceptive because Mitchael only testified that one employee ever touched him. Mitchael Depo. 25:20–25. The nature of the "touching" is not explained in the Response, which is likely intentional because it was relatively minor: according to Mitchael, Preston patted him on the back multiple times. *Id*. 26:12.

The next allegation the Court reviews is that "employees would pressure Mitchael to make uncomfortable comments to customers such as asking a customer if they were dating one of the McDonald's employees." To support this allegation, Mitchael cites to one section of his own deposition transcript. Again, the use of the plural form of "comments" is misleading because he testified of only one event. Specifically, Brianna, another Rawden employee, told Mitchael to "ask a customer if they were dating Bobby White." Mitchael Depo. 47:20–24. Mitchael also testified, however, that Bobby White was a friend of his. *Id*. 48:9–10. Mitchael didn't want to ask the customer, but Brianna kept asking him to do it, so he asked. *Id*. 48:1–4.

Next, the Court reviews the allegation that "employees would pressure Mitchael to perform their job responsibilities." To support this allegation, Mitchael cites to a single section of his own deposition transcript. He also cites to one section of Chad's deposition transcript. Upon reviewing the record, the Court confirms that this allegation fits the pattern of those before. In reality, there is evidence of only one instance, not multiple. Another Rawden employee, Brian, told him to clean the bathroom on one occasion. Mitchael Depo. 59:16–21. Mitchael's citation to Chad's deposition actually contradicts this allegation. Chad testified that he was not aware of any times when Mitchael was asked to perform someone else's job duties and that keeping the bathroom clean was a responsibility that all employees shared. *See* ECF No. 48-18, Chad Depo. 78:4–79:10.

Finally, the Court inspects the allegation that "employees and managers would call Mitchael names such as 'stupid,' or 'slow' or 'retard.'" The evidence that Mitchael was called "retard" is almost non-existent. The derogatory name appears only once in the record, and it does not come from Mitchael himself. Instead, Dr. Kay included in her report that "Mitchael indicated that he was occasionally called 'retard' and directed to hug other staff people." ECF No. 69 p. 11. Rawden also points to evidence that suggests that Mitchael was not called "slow" because of his disabilities. When asked about being called "slow," Mitchael explained,

> Like if I was in back cash and we had a full line of cars and I would be paying
> amount, she would be like, hurry up, you're going to slow, you need to go faster, or
> you know, she would yell at me for little things.

Mitchael Depo. 61:5–9.

In sum, the Court concludes that none of the alleged incidents are severe enough on their own to amount to a hostile work environment as a matter of law. Even when the allegations are considered together, with all the surrounding circumstances, Rawden makes a strong argument that the harassment was not severe or pervasive enough to create a hostile work environment. That argument, and the evidence that supports it, could very well convince a jury.

However, it would not be proper for the Court to make that decision because Mitchael has provided at least some evidence, however thin it may be, that he was harassed multiple times, in varying ways, over a relatively short period, and a reasonable jury could find that the harassment negatively affected Mitchael's ability to do his job.[7] Indeed, "[d]etermining whether an employee suffered a sufficiently severe or pervasive environment to prevail on a hostile work environment claim is generally unsuited for summary judgment because that determination is 'quintessentially a question of fact.'" *Quick v. GEO Grp., Inc.*, No. 3:18-CV-93, 2020 WL 532343, at *14 (W.D. Pa. Feb. 3, 2020) (*citing Rorrer v. Cleveland Steel Container*, 712 F. Supp. 2d 422, 429 (E.D. Pa. 2010)). Thus, Mitchael has met his burden of showing that a question of fact exists as to whether he was subjected to a hostile work environment in violation of the ADA.

### 2. *Disability Discrimination Claim*

Mitchael's next claim is that he was discriminated against because of his disability. "In order to establish a prima facie case of disparate treatment under the ADA, a plaintiff must show (1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000) (cleaned up).

Rawden takes issue only with the third element. Specifically, Rawden argues that it is entitled to summary judgment in its favor because there is no evidence in the record that Mitchael suffered an adverse employment action. "An adverse employment action can generally be

---

[7]     The Court notes that events surrounding the slap could be considered by the jury when determining whether the alleged harassment was severe or pervasive too. Although the jury could not consider the slap itself for the reasons explained in this Opinion, Mitchael also testified that he was goaded to hug Ziegler by employees, that employees threw his food on the ground, and that employees kept him from leaving the staff room. *See* Mitchael Depo. 28:21–34:22. All of that is fair game because Rawden's defense discussed in this Opinion only protects it from liability flowing from Ziegler.

demonstrated by a hiring, firing, failure to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Greer v. Mondelez Glob., Inc.*, 590 F. App'x 170, 173 (3d Cir. 2014). Rawden points out that Mitchael was not fired, he was not demoted, he was not turned down for a promotion, and he suffered no other kind of adverse employment action. [8]

However, a hostile work environment in and of itself may be an adverse employment action. *See id*; *see also Henley v. Brandywine Hosp., LLC*, No. CV 18-4520, 2019 WL 3326041, at *10 (E.D. Pa. July 24, 2019). The Court has already determined that genuine disputes of material facts exist as to whether Rawden subjected Mitchael to a hostile work environment. It follows logically then that a genuine dispute of material fact also exists as to whether Mitchael suffered an adverse employment action via a hostile work environment. As a result, this claim will go to the jury too.

### 3. Retaliation Claim

Mitchael's third claim is that Rawden retaliated against him for complaining about the slap. To establish discriminatory retaliation under the ADA, a plaintiff must show three things: "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Fogleman v. Mercy Hosp., Inc*., 283 F.3d 561, 567–68 (3d Cir. 2002) (*quoting Krouse v. American Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir.1997)).

According to Mitchael, Rawden lowered his working hours in retaliation. Rawden points out that Mitchael has failed to produce any direct evidence that it lowered Mitchael's hours in retaliation. But a plaintiff will rarely be able to produce direct evidence of retaliation, and for that

---

[8]     Originally, Mitchael claimed that he was denied a promotion in retaliation for complaining about the slapping incident. However, he withdrew that argument in his Response. Resp. 21.

reason, plaintiffs often must rely on indirect evidence to support a retaliation claim. Courts apply the *McDonnell Douglas* burden-shifting to determine whether indirect evidence of retaliatory discrimination is enough to survive a motion for summary judgment. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973).

Under this analysis, plaintiffs must first establish a prima facie case of retaliation. If they do, then the burden shifts to the employer to proffer a legitimate non-discriminatory reason for the employer's decision. If employers meet this burden, then the burden shifts back to the plaintiff to show that there is a genuine issue of material fact as to whether the employer's explanation is false, or pretextual. *See Moore v. City of Philadelphia*, 461 F.3d 331, 342 (3d Cir. 2006).

The Court determines that Mitchael has met his initial burden of establishing a prima facie case of retaliation. It is undisputed that he engaged in protected activity: complaining of harassment. And it is undisputed that his hours were lowered, which could be an adverse employment action. The proximity of the events is enough to create a question of fact as to whether Mitchael's complaint caused the lowered hours; he complained in November, and he worked fewer hours the very next month. Thus, the burden shifts to Rawden to offer a legitimate reason for the lowered hours.

Rawden explains that the lower hours were because of "the typical ebb and flow of general business operations and considerations of holidays." Reply 10; *see also* RSUF ¶ 40. Rawden also reasons that Mitchael's hours also depend on factors outside of its control, such as whether other employees call in sick. *See* ECF No. 45-14 ¶¶ 10–11. The Court determines that Rawden's offered reasons are sufficient to meet its burden. Thus, the burden shifts back to Mitchael to show that Rawden's explanation is false.

Mitchael denies Rawden's explanations, but he does not produce evidence to prove that they are false. For example, he does not produce any evidence that other employees' hours weren't also

lower in the month of December. A cursory review of the record confirms that Rawden's explanation is legitimate, and that Mitchael is simply grasping at straws.

For example, Mitchael's hours around the incident were as follows,

| Month and Year | Hours Scheduled | Hours Worked | Difference |
|---|---|---|---|
| November 2019 | 109.5 | 114.75 | +5.25 |
| December 2019 | 107 | 83.9 | -23.1 |
| January 2020 | 113 | 125.85 | +12.85 |
| February 2020 | 107 | 91.27 | -15.73 |
| **Total** | **436.5** | **415.77** | **-20.73** |

Mitchael actually worked more hours than he was scheduled for in two of the four months surrounding the incident. In total, he worked only 20.73 fewer hours than he was scheduled for over a four-month time period. This difference is minimal. Moreover, Mitchael himself testified that his schedule was not different after the slapping incident. *See* Mitchael Depo. 50:11–13. As further proof of a lack of animus, Mitchael has received multiple raises since complaining about the incident, and he testified that he does not believe that Rhonda treated him poorly after he complained. *See* Mitchael Depo. 44:3–6.

In sum, there is no genuine dispute of material facts as to whether Rawden's reason for Mitchael's lowered hours is pretextual. Thus, there is no issue for trial, and Rawden is entitled to summary judgment in its favor on this claim.

## V.    CONCLUSION

There are genuine disputes as to material facts for two of Mitchael's claims. Specifically, there is a question of fact as to whether Mitchael was subjected to a hostile work environment in violation of the ADA. However, Mitchael cannot, as a matter of law, rely on any of Zeigler's acts to

support this claim because there is no question of fact as to whether Rawden took adequate measures that were reasonably calculated to prevent that harassment from happening again. For the same reasons that there is an issue for trial for the hostile work environment claim, there is an issue for trial for the disability discrimination claim under the ADA. As a result, these two claims, along with the PHRA claim based on the same alleged conduct, will proceed to trial.

However, there are no genuine disputes as to material facts as to whether Mitchael was subjected to a hostile work environment claim in violation of Title VII or suffered an adverse employment action based on his sex. Thus, Mitchael's claims, to the extent that they are brought under Title VII, are dismissed.

Finally, there are no genuine disputes as to material facts as to whether Rawden retaliated against Mitchael for engaging in protected activity. Thus, the Court grants summary judgment in Rawden's favor on this claim.

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*_____
JOSEPH F. LEESON, JR.
United States District Judge